# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

JUNE TERM, 1898.

THOMAS McMICHAEL, appellant,

*v.*

HENRY C. WEBSTER et al., respondents.

[Filed November 14th, 1898.]

1. Upon the foreclosure of a purchase-money mortgage the mortgagor may claim a reduction from the mortgage debt if the quantity of land which was the subject of the purchase and sale had been falsely and fraudulently represented to be greater than that which was actually conveyed and such fraudulent misrepresentations induced the purchase. Such a defence may be now interposed by answer without cross-bill.

2. When one who has been induced to contract for the purchase of land by fraudulent misrepresentations of its quantity, acquires knowledge before accepting the conveyance that the quantity which it will pass will not equal that represented, his acceptance of the conveyance will estop him from a rescission of the transaction. If by the tendered conveyance he is put upon

295

McMichael v. Webster.

inquiry and reasonable inquiry would disclose the deficiency, a like result will follow. But when the tendered conveyance indicates that the quantity of the land is less than that which had been represented, and the purchaser calls the attention of the vendor to the discrepancy and is assured by the vendor that the represented amount will pass by the conveyance because of accretions made along a tide-water boundary of the tract, which accretions, if the representation was true, would be included in the description and pass by the conveyance, the purchaser is not bound to resort to a survey, but may rely on the representation, and if it was knowingly false, may have relief by a deduction from the mortgage debt. *Turner* v. *Houpt, 8 Dick. Ch. Rep. 526; S. C., 10 Dick. Ch. Rep. 593*, distinguished.

3. Waste of the mortgaged premises by the mortgagee when in possession, not as mortgagee but in some other right, cannot be set up as a defence to the foreclosure of a mortgage.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *McMichael* v. *Webster, 9 Dick. Ch. Rep. 478.*

*Mr. Lindley M. Garrison,* for the appellant.

*Mr. S. Morris Waln* and *Mr. John W. Wescott,* for the respondents.

The opinion of the court was delivered by

MAGIE, C. J.

The decree appealed from was made upon the advice of Vice-Chancellor Pitney, whose opinion is reported in *9 Dick. Ch. Rep. 478.* In the opinion and the statement prefixed to it the questions raised in the cause are fully stated, and they need not be here repeated.

The decree is assailed as erroneous upon the ground that it abated from the principal sum of $5,000, named in and secured by the mortgage given by Webster, the respondent, to McMichael, the appellant, the foreclosure of which was the object of the bill—first, the sum of $100 for waste committed by appellant upon the mortgaged premises after their sale by appellant to respondent; and second, the further sum of $3,178.80 for a deficiency in the quantity of land so sold, and awarded to appel-

lant the sum of $1,721.30 only, for which, with interest, the mortgaged premises were decreed to be sold.

The claim of respondents to an abatement from the mortgage in the above and in other respects, was set up by answer alone. There was no cross-bill. The insistment was that, upon a bill for the foreclosure of a mortgage given for purchase-money, defences of that character could be interposed by answer alone without cross-bill. The vice-chancellor held that the mortgage in question was a purchase-money mortgage and sustained the defences to the extent above indicated.

Appellant questions the correctness of the decree in respect to both the deductions from the amount of his mortgage. It will be convenient to consider first that which was allowed by reason of a deficiency in the quantity of the land conveyed by appellant to respondents and upon which the mortgage was given.

Appellant does not contend that a claim for such an allowance cannot be set up by answer to a bill for the foreclosure of a purchase-money mortgage, and in this course was well advised, for such a practice is, we think, established beyond dispute. In 1871 exceptions to an answer, interposed to a bill for the foreclosure of a purchase-money mortgage, setting up fraudulent representations as to the quantity of title conveyed, were sustained by the chancellor on the ground that such a defence required a cross-bill. His action was affirmed in this court. *O'Brien* v. *Hulfish, 7 C. E. Gr. 471.* In the opinion of Chief-Justice Beasley it was pointed out that, in accord with the strict rules of equity practice, relief in respect to such fraud could only be obtained by an original or cross-bill. But as the reason for that practice was that without such a bill the mortgagee was deprived of the benefit of his answer to the charges of fraud, and as the utility of a bill in that respect had been lessened since the passage of the then recent statute authorizing a complainant to waive the verification of an answer by defendant, he suggested that the court of chancery might dispense with a cross-bill and establish a practice of setting up such a defence by answer alone.

Afterward, in 1876, the question came again before the court of chancery upon exceptions to an answer filed to a bill to fore-

McMichael v. Webster.

close a purchase-money mortgage, which set up as a defence a fraudulent representation of the quantity of land agreed to be. conveyed. Chancellor Runyon adverting to the fact that the practice of the court permitted a complainant in a cross-bill to call for an answer without oath and so deprive the complainant in the original bill of any benefit of an answer upon oath, and the further fact that the right to any such deductions could be tried on the answer alone without any prejudice to the complainant, applied the maxim "*cessante ratione, cessat ipsa lex,*" and overruled the exceptions. *Dayton* v. *Melick, 12 C. E. Gr. 362.* Upon final hearing of that cause a decree was made for the mortgagee, not for the amount of his mortgage, but for an amount diminished by a deduction representing the difference between the quantity of land actually conveyed and that which the purchaser had been induced to believe he would acquire by his purchase, by reason of fraudulent misrepresentations of the seller. *Dayton* v. *Melick, 5 Stew. Eq. 570.* That decree was brought to this court by appeal, and two questions were thereby raised—*first,* whether such a defence was properly presented by answer without cross-bill, and *second,* whether the proofs established the defence. The decree was reversed, but solely upon the ground that the evidence was insufficient to establish the fact that fraudulent representations had been made. The practice of permitting a defence of that sort to be interposed by answer alone was expressly approved. *Melick* v. *Dayton, 7 Stew. Eq. 245.* That practice must be considered as settled.

The contention of appellant is that, conceding the correctness of this practice, it was improperly resorted to in this case because, as he claims, the mortgage of appellant was not a purchase-money mortgage.

The transaction between the parties was an exchange of lands. The original contract was in writing, and by its terms respondents were to convey to appellant certain lands free from encumbrance and to pay him $2,500 in cash. When the parties came to perform the contract respondents were unable to make the cash payment, and it was mutually agreed that its payment should be deferred and that respondents should give appellant their

McMichael *v.* Webster.

bond for its payment at a future day and secure the bond by the mortgage in question. To this extent the mortgage was plainly a purchase-money mortgage. But it was also ascertained at the same time that the lands which respondents had contracted to convey were encumbered to the extent of over $2,500, and that they were unable to free them from those encumbrances. So it was further mutually agreed that appellant should accept the conveyance of those lands subject to such encumbrances, and that respondents should pay him the amount of such encumbrances as follows: All in excess of $2,500, in cash, and $2,500 at a future day, which $2,500 was to be included in the above-mentioned bond and secured by the mortgage in question. The transaction as finally concluded was therefore this: The property which respondents had contracted to give in exchange unencumbered was recognized as diminished in exchangeable value by the amount of such encumbrances, and respondents were to make up the diminution by money, part paid at once and part to be paid in the future. Such money was clearly purchase-money.

The vice-chancellor properly held the whole mortgage to be for purchase-money.

It is next to be considered whether there was any error in the finding below that appellant fraudulently misrepresented to respondents the quantity of land which they were to acquire by the trade. I deem it unnecessary to discuss the proofs on that subject. The vice-chancellor saw the witnesses and heard their testimony. A careful examination of the case compels me to say that not only do I find no ground for dissenting from his conclusions but that I entirely concur with him.

It is, however, strenuously contended that respondents are estopped from claiming any relief for an injury resulting from a deficiency in the land conveyed them. It is insisted that such estoppel arises because they had notice, or what was equivalent to notice, that the conveyance would not pass to them the quantity of land which had been represented, but a much less quantity, and that with such notice they accepted the conveyance.

When one who has been induced to enter into a contract by

false and fraudulent representations, learns of the deception before the performance of the contract, doubtless he may refuse to perform it. If with knowledge, or what is equivalent to knowledge, of the fraud he proceeds to perform and obtains the benefit of a performance he will not be permitted to rescind but will be deemed to have elected to take what he got by the performance. This doctrine is illustrated by the case of *Turner* v. *Houpt*, where there was a contract for the exchange of lands described in an attached memorandum, which contract was expressly declared to be binding on the parties only "if each property is found to be on examination as described herein." The attached memorandum contained a detailed statement of many improvements upon the land to be conveyed to Turner, the existence of which could be verified by observation. The proofs showed that Turner visited and examined, or had the opportunity to examine, that land and to observe the improvements thereon. Thereafter he accepted the contract by a memorandum in writing appended to it. Afterwards he accepted the conveyance. A decree directing a reconveyance to Turner's representatives on the ground that the description of the property was false was reversed in this court. The memorandum of our decision does not specify the reasons for reversal, but so far as the above-mentioned point is concerned it went upon the ground that when Turner, having made, or had the opportunity to make, the examination the contract called for and to verify the description by his observation, afterwards affirmed and performed the contract, he was estopped from rescinding it. *Turner* v. *Houpt,* 8 *Dick. Ch. Rep.* 526 ; S. C., 10 *Dick. Ch. Rep.* 593.

Whether the same doctrine is applicable to the partial rescission which results from making allowances or deductions from the thing contracted for because of misrepresentations need not be determined, for the facts do not justify the inference that respondents acquired any knowledge, actual or constructive, that the conveyance to them would pass a less quantity of land than had been represented before the conveyance was accepted.

The contention on this point is that the deed intended to be

executed to convey appellant's land to respondents, which de-
scribed the land by metes and bounds and as containing a frac-
tion over one hundred and forty-nine acres, was in the hands of
respondents or their agent for some days before its execution
and delivery; that respondents thereby acquired knowledge that
the tract did not comprise one hundred and eighty-five acres, as
had been represented, or if actual knowledge thereof was not
acquired, that they were put upon inquiry, and such inquiry
should have induced a survey which would have disclosed the
truth, and that after such knowledge as was or ought to have
been acquired by respondents they accepted the conveyance.

The vice-chancellor found upon the evidence that respondents
had no actual personal knowledge that the description in the
deed called for only one hundred and forty-nine acres or a frac-
tion. This conclusion was, I think, entirely warranted, but is of
little consequence because it appears that respondents' attorney,
employed to examine the title and entrusted with the acceptance
of the conveyance, did have knowledge of the fact. Such infor-
mation doubtless put the intending purchasers on inquiry, and
under some circumstances a reasonable inquiry might require a
survey. But there were no such circumstances. The evidence
amply justifies the conclusion of the vice-chancellor that re-
spondents' agent, on discovering the description of the quantity
of the land contained in the deed to be less than represented,
called the attention of appellant to that fact, and that appellant
then averred that the real quantity of land which the deed
would convey was the one hundred and eighty-five acres previ-
ously represented and contracted for, and that the amount was
made up by accretions along the line of a tide-water creek, which
was a boundary of the tract. The description of the tract in
the deed was such that if the represented accretions had been in
fact made they would pass by it to the grantee. Respondents
having made inquiry and received this plausible explanation of
the observed discrepancy, were obviously not bound to test its
accuracy further. That such explanation was knowingly false
was found below, and I concur entirely in that conclusion.

The result is that a case for deduction from the mortgage debt

upon this ground was clearly made out, and as no question·is made as to the amount allowed the decree is to that extent correct.

It remains to consider whether the deduction from the mortgage debt made on account of waste of the mortgaged premises is open to the objection of appellant.

The waste claimed consisted in the removal from the mortgaged premises of some growing trees and some farm bridges and sheds by the mortgagee after the date of the contract of sale and in part after the delivery of the conveyance of the land.

A mortgagee in possession may doubtless be compelled to account for his waste of the mortgaged premises and to submit to a deduction therefor from the mortgage debt. Such allowance may be made upon a bill to foreclose the mortgage if ·the claim is presented by cross-bill. *Onderdonk* v. *Gray, 4 C. E. Gr. 65; Davis* v. *Flagg, 17 Stew. Eq. 109.* It does not appear that the court of chancery has adopted the practice of permitting such relief to be obtained by defendant by answer alone.

But an obvious essential to such relief is that the mortgagee, when committing waste, was in possession as mortgagee and not in some other right. *Davis* v. *Flagg, ubi supra.* Herein, in my judgment, is the infirmity of this branch of the decree. Part of the injury to respondents occasioned by appellant's acts was done while appellant was vendor in possession pending the performance of a contract of sale. The remaining injury was done after the delivery of the deed but while grantor remained in possession under a clause in the contract of sale. Prior to the delivery of the deed appellant was not mortgagee. After delivery he was mortgagee, but his possession was not under the mortgage but under the contract.

For an injury done to the *corpus* of the estate while thus in possession appellant was undoubtedly liable to respondents and such liability could be enforced by an action at law. It created an independent personal demand in nowise growing out of the mortgage relation. It was therefore incapable of being interposed as a defence to a bill to foreclose. *Brown* v. *Coriell, 5 Dick. Ch. Rep. 753.*

It results that this part of the decree cannot be sustained.

The decree must therefore be reversed and a new decree made in conformity with these views.

*For reversal and modification*—THE CHIEF-JUSTICE, DEPUE, DIXON, LIPPINCOTT, VAN SYCKEL, ADAMS, NIXON—7.

*For reversal in full*—COLLINS, GARRISON, LUDLOW, BO-GERT—4.

*For affirmance*—None.